UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GEORGE ATONDO,

        Plaintiff,

  v.

COUNTY OF SOLANO, ANDREW SWANSON in his individual capacity, and DOES 1 through 15, inclusive

        Defendants.

NO. 2:08-CV-2794 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendants County of Solano (the "County") and Andrew Swanson ("Swanson") (collectively "defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff George Atondo ("plaintiff" or "Atondo") opposes the motion. For the reasons set forth below,[1] defendant's motion to dismiss is DENIED.

/////

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1

**BACKGROUND**

Plaintiff Atondo began his employment with defendant County in February 2004. (Pl.'s First Am. Compl., filed June 25, 2009, ¶ 7.) On March 14, 2005, Atondo was transferred by the County to Nut Tree Airport to the position of Airport Services Worker. (Id.) Defendant Swanson was Manager of the Nut Tree Airport and Atondo's direct supervisor. (Id. ¶ 5.)

From March 2005 to November 29, 2007, plaintiff alleges that Swanson made and directed derogatory comments, racist slurs and jokes regarding persons of color and Native Americans to Atondo and other employees of color. (Id. ¶ 9.) Atondo is of Native American ancestry. (Id. ¶ 8.) Swanson repeatedly referred to Native Americans as "low life rat Indians," and mocked the livelihood of Native Americans residing in Alaska as fisherman. (Id. ¶ 9.) Throughout his employment, Atondo told Swanson to refrain from making or directing derogatory and racist slurs and jokes regarding persons of color, including African-Americans and Native Americans. (Id. ¶ 10.) Atondo also observed that Swanson treated minority employees in a demeaning, racist manner and intentionally engaged in acts intended to demean and humiliate them. (Id.)

In October 2007, Eric Johnson ("Johnson"), a Caucasian male, was hired as a second Airport Services Worker at the Nut Tree Airport. (Id. ¶ 11.) Plaintiff alleges that Swanson appeared to show preferential treatment to Johnson because of his race, such as reprimanding Atondo harshly for minor errors while being lenient with Johnson for more serious errors. (Id.)
/////

On or about November 9, 2007, Atondo started a two week vacation. (Id. ¶ 12.)  Before leaving, Swanson instructed Atondo to turn in his County cell phone and keys. (Id.)  While Atondo was on vacation, his office desk was cleared of his belongings. (Id.)

During his employment, Atondo regularly tested the County's Airport fuel truck for fuel contamination. (Id. ¶ 13.)  On November 17, 2007, Atondo checked the fuel truck and found water contamination. (Id.)  Plaintiff asserts that refueling an airplane with water-contaminated fuel creates a danger and increases the risk of injury to pilots, Nut Tree Airport employees, and the public at large. (Id.)  On November 17 and 18, 2007, Atondo reported to Swanson and Johnson that he had found water contamination. (Id. ¶ 14.)  On November 18, 2007, Atondo contacted representatives from Chevron and the Federal Aviation Agency ("FAA") and notified them of the fuel contamination. (Id. ¶ 15.)

On November 26, 2007, defendants placed Atondo on paid administrative leave. (Id.)  While Atondo was on paid administrative leave, he reported the fuel contamination incidents as well as the alleged subsequent illegal acts committed to fraudulently cover up the incident to a California Occupation Safety and Health Administration ("OSHA") representative and the Federal Bureau of Investigation ("FBI"). (Id. ¶ 16.)  Atondo asserts that he made these reports as a private citizen because he was concerned about the danger posed to the public due to the contaminated fuel and the unsafe practices at Nut Tree Airport directed by Swanson. (Id.)  On

3

June 16, 2008, defendants terminated Atondo's employment. (Id. ¶ 17.) Plaintiff contends that he was terminated in retaliation for his opposition to discrimination as well as for reporting the dangerous and unlawful fuel contamination. (Id.)

On September 2, 2008, Atondo exhausted his administrative remedies under the California Fair Employment and Housing Act ("FEHA") and Title VII. (Id. ¶ 18.) On September 2, 2008, the Department of Fair Housing and Employment ("DFEH") issued Atondo a Notice of Right to Sue; on March 27, 2009, the U.S. Equal Employment Opportunity Commission ("EEOC") also issued a Notice of Right to Sue. (Id.) On June 25, 2009, plaintiff filed a First Amended Complaint, asserting claims for (1) race discrimination in violation of 42 U.S.C. §§ 1981 and 1983, Title VII, 42 U.S.C. § 2000e *et seq.*, and FEHA; and (2) retaliation in violation of 42 U.S.C. §§ 1981 and 1983, Title VII, 42 U.S.C. § 2000e *et seq.*, and FEHA, Cal. Gov't Code § 12940.

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not

4

been alleged." <u>Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)(citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged enough facts to "state a claim to relief that is plausible on its face." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. <u>Id.</u> at 1952. When there are well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 1950.

**ANALYSIS**

**A.   Race Discrimination Claims**[2]

Plaintiff brings claims of race discrimination in violation of 42 U.S.C. §§ 1981 and 1983, FEHA, and Title VII against defendant County. He also brings race discrimination claims

---

[2] While plaintiff's title to each of these claims sets forth that it is a discrimination claim, the general factual allegations as well as the specific allegations following each claim make clear that plaintiffs is bringing both discrimination and harassment theories pursuant to the statutes.

5

pursuant to 42 U.S.C. §§ 1981 and 1983 against defendant Swanson. Defendant contends that plaintiff's complaint alleges insufficient facts to state a claim for discrimination.

Plaintiff's complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2); Swierkiewicz, 534 U.S. at 508. "[U]nder a notice pleading system, *it is not appropriate to require a plaintiff to plead facts establishing a prima facie case*." Swierkiewicz, 534 U.S. at 511 (emphasis added) (rejecting the application of a higher pleading standard to claims of discrimination). Rather, the complaint must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512 (internal quotations omitted). The liberal notice pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."[3] Id. Further, the court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Schermerhorn, 373 U.S. at 753 n.6.

Title VII provides that it is "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. §

---

[3] Accordingly, defendants' pleas for specific and detailed information in their reply, based on an apparent belief that they should be able to fully litigate the claims on the basis of the allegations of the complaint alone, are unpersuasive.

6

2000e-2.  Similarly, § 1981 prohibits interference with contracts on the basis of race.  McDonald v. Santa Fe Transp. Co., 427 U.S. 273 (1976).  Facts that give rise to Title VII claims are generally sufficient to state a claim for § 1981 violations.  See Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982); EEOC v. Inland Marine Indus., 729 F.2d 1229, 1233 n.7 (9th Cir. 1984) ("A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a . . . claim under Title VII . . . ."); see also Lowe v. Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985), *amended by* 784 F.2d 1407 (9th Cir. 1986).  Likewise, FEHA provides that it is an unlawful employment practice for an employer to discharge or to discriminate against a person on the basis of race.  Cal. Gov't Code § 12940.  Because the antidiscrimination objective and relevant wording of Title VII and § 1981 are similar to those of FEHA, "California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA."  Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 812 (2001).  Likewise, § 1983 is the general enforcement mechanism for the protection of constitutional rights, including equal protection rights under the Fourteenth Amendment.  Employees may bring both Title VII and § 1983 claims even when both claims are based on the same set of operative facts.  Roberts v. Coll. of the Desert, 870 F.2d 1411, 1415-16 (9th Cir. 1988).  To support a claim for discrimination in violation of these statutes, plaintiff may produce direct or indirect evidence that gives rise to an inference of discriminatory motive.  See Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).

### 1.  Claims against Defendant Swanson

In this case, plaintiff claims that during the course of his employment, defendant Swanson created a hostile work environment due to his conduct, including his racially offensive comments about African-Americans and persons of color.  Plaintiff further claims that he was ultimately unlawfully terminated based upon his race.  In support of these claims, plaintiff alleges that during the course of his employment, his direct supervisor consistently made racist and derogatory remarks.  Plaintiff also alleges that his supervisor gave a Caucasian worker preferential treatment, such as being more lenient in disciplinary measures.  Finally, plaintiff alleges that defendants, including defendant Swanson, terminated him.  Taking plaintiff's allegations as true and drawing all reasonable inferences therefrom, plaintiff has sufficiently alleged that defendant Swanson created a hostile work environment and subsequently terminated him based on discriminatory motives.

Contrary to defendants' assertion, plaintiff need not detail each and every instance of discrimination at the pleading stages. Nor does plaintiff need to substantiate every element of a prima facie case through his allegations.  Rather, a pleading is sufficient so long as it puts defendant on notice of the charges against him and the factual basis upon which it rests. Plaintiff's complaint meets this standard.[4]  Accordingly,

/////

---

[4]  Defendants' citation to case law involving sufficient evidence on a motion for summary judgment are therefore not applicable.

8

defendants' motion to dismiss plaintiff's discrimination claims against defendant Swanson is DENIED.

### 2. Claims against Defendant County

Plaintiff also alleges that defendant County is liable for terminating him on the basis of his race as well as failing to prevent a hostile work environment.

In order to hold a municipality liable pursuant to 42 U.S.C. §§ 1981 and 1983, a plaintiff must demonstrate that the injury was caused by "execution of [a] government[] policy or custom." City of Canton v. Harris, 489 U.S. 378, 386 (1989). The existence of a municipal policy may be established in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotations omitted)). Congress intended that government "custom" be given a broad reading in § 1983 claims, "because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage'

with the force of law." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (U.S. 1978) *citing* Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-168 (1970).

In this case, plaintiff alleges that defendant County was given notice of the pattern of discriminatory conduct and mistreatment of people of color at the Nut Tree Airport, but was deliberately indifferent to the practice. (Compl. ¶¶ 42-43.) Plaintiff also alleges that the County treated him differently with respect to evaluations of his work performance, which caused his loss of seniority, standing, and other benefits. Finally, plaintiff alleges that his termination was officially adopted by the County, thus ratifying the discriminatory conduct. (Compl. ¶ 24.) Taking plaintiffs' allegations as true and drawing all reasonable inference therefrom, plaintiff has sufficiently alleged that there was a longstanding practice or custom by the County of "tolerating, encouraging, and approving racial discrimination" and harassment at the Nut Tree Airport. (Compl. ¶ 24.) Therefore, defendants' motion to dismiss plaintiff's discrimination claims against the County is DENIED.

**B.   Retaliation Claims Arising Out of Discriminatory Conduct**

Plaintiff brings claims of retaliation in violation of Title VII, 42 U.S.C. § 1981, and FEHA against defendant County based upon defendant's alleged adverse employment action taken in response to plaintiff's opposition to racial discrimination and harassment. He also brings similar retaliation claims pursuant

to 42 U.S.C. §§ 1981 and 1983[5] against defendant Swanson. Defendant again contends that plaintiff's complaint alleges insufficient facts to state a claim.

Title VII specifically makes unlawful:

> Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17].

42 U.S.C. § 2000e-3. Sections 1981 and 1983, as well as FEHA, likewise prohibit such retaliatory conduct. See Manatt v. Bank of Am., NA, 339 F.3d 792, 800-01 (9th Cir. 2003) ("[W]here a plaintiff charges an employer with racial discrimination in taking retaliatory action, a cause of action under § 1981 has been stated."); Hernandez v. City of Vancouver, 277 Fed. Appx. 666, 668-69 (9th Cir. 2008) (§ 1983); McAlindin v. County of San Diego, 192 F.3d 1226, 1238 (9th Cir. 1999) (FEHA). To establish a case of retaliation, a plaintiff must prove (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987); McAlindin, 192 F.3d at 1238.

/////

---

[5] Plaintiff's allegations of retaliation in violation of 42 U.S.C. § 1983 against defendant Swanson arise out of both Fourteenth Amendment violations for discriminatory retaliation as well as First Amendment violations for protected speech. The court addresses each of these theories separately.

11

### 1. Claims against Defendant Swanson

Plaintiff alleges that he protested against defendant Swanson's use of racial epithets and the pattern of mistreatment of the minority patrons, contractors, and staff assigned to the Nut Tree Airport. (Compl. ¶ 27.) Plaintiff also alleges that, as a result of defendant Swanson's knowledge of these protestations, Swanson subjected him to adverse treatment, including placing him on administrative leave and ultimately terminating him. At the pleading stage, these allegations are sufficient to put defendants on notice of the basis for plaintiff's §§ 1981 and 1983 retaliation claims arising out of his conduct opposing discrimination at the workplace. Accordingly, defendants' motion to dismiss plaintiff's §§ 1981 and 1983 retaliation claim against defendant Swanson is DENIED.

### 2. Claims against Defendant County

Plaintiff alleges that defendant Swanson engaged in discriminatory conduct and that the County had racially discriminatory policies and procedures. Plaintiff further alleges that the County was aware of plaintiff's protestations against such conduct and that the County terminated his employment because of this conduct. Finally, plaintiff alleges that the County's conduct was in conformance with their policy, custom, and practice of tolerating, encouraging, and approving racial discrimination. These allegations are sufficient to state a claim against defendant County under the liberal notice pleading standard. Accordingly, defendants' motion to dismiss plaintiff's claims for retaliation against defendant County is DENIED.

**C.     Retaliation Arising out of Speech**

Finally, plaintiff brings a claim pursuant to 42 U.S.C. § 1983 based upon his allegations that defendant Swanson violated plaintiff's rights under the First Amendment by subjecting him to an adverse action in response to his protected activity.

"To state a First Amendment claim against a public employer, an employee must show: (1) the employee engaged in constitutionally protected speech; (2) the employer took 'adverse employment action' against the employee; and (3) the employee's speech was a 'substantial or motivating factor for the adverse action.'" Marable v. Nitchman, 511 F.3d 924, 929 (9th Cir. 2007) (quoting Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003)).  As to the first issue, whether plaintiff engaged in protected speech, the court must engage in a three-step analysis: First, the court must determine whether plaintiff spoke as a citizen or an employee.  Garcetti v. Ceballos, 126 S.Ct. 1951 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). Second, the court must determine whether, in light of the content, form and context of the speech, it touched on matters of public concern.  Connick v. Meyers, 461 U.S. 138, 146 (1983). Third, the court must determine whether the value of the employee's speech outweighs "the government's interest in the effective and efficient fulfillment of its responsibilities to the public."  Id. at 150.

////

Plaintiff alleges that he discovered water contamination in the fuel truck, which he contends poses a danger to Nut Tree Airport employees and the public at large.  Plaintiff alleges that he reported the contamination to defendant Swanson, his co-worker, representatives from Chevron, the FAA, OSHA, and the FBI. Plaintiff asserts that he made these reports as a private citizen because he was concerned about the danger posed to the public. Finally, plaintiff alleges that defendants terminated him as a result of this reporting.  These allegations are sufficient to withstand a motion to dismiss.  Accordingly, defendants' motion to dismiss plaintiff's § 1983 claims against defendant Swanson arising out of alleged First Amendment violations is DENIED.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(6) DENIED.

IT IS SO ORDERED.

DATED: October 1, 2009

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE